IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Builders Mutual Insurance Company, | ) | C/A No.: 4:09-532-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Report and Recommendation |
| Wingard Properties, Inc.; James Thomas | ) | |
| Wingard III; Deborah Wingard; Wingard | ) | |
| Family, LLC; Steve Schwartz; and | ) | |
| Jennifer Schwartz, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Builders Mutual Insurance Company ("Builders Mutual") filed this declaratory judgment action concerning its rights and obligations pursuant to a commercial general liability ("CGL") policy ("the Policy")[1] it issued to Defendant Wingard Properties, Inc. ("Wingard Properties"). The case comes before the court on the cross-motions for summary judgment filed by Builders Mutual [Entry #37] and by Defendants Wingard Properties and Wingard Family, LLC ("Wingard Family")(collectively "Wingard") [Entry #41].[2] Also named as defendants in this action are James and Deborah Wingard ("Mr. and Mrs. Wingard") and Steve and Jennifer Schwartz ("Homeowners").

---

[1] A copy of the Policy is available as exhibit B to Plaintiff's memorandum [Entry #47-2].

[2] The same counsel jointly represents Wingard Properties and Wingard Family, and filed a joint memorandum in opposition to Builders Mutual's motion for summary judgment and a joint motion for summary judgment on coverage issues. Consistent with the briefs submitted, this Report and Recommendation refers to Wingard Properties and Wingard Family collectively in the singular as "Wingard" for ease of reference.

This matter was referred to the undersigned pursuant to Local Civil Rule 73.02(B)(2)(e) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge. The court conducted a hearing on June 24, 2010, at which only counsel for Builders Mutual appeared.[3] After considering the written materials submitted and the argument of counsel, the undersigned recommends a finding that the CGL policy at issue does not provide coverage, that Builders Mutual's Motion for Summary Judgment [Entry #37] be granted, and that Wingard's Motion for Summary Judgment [Entry #41] be denied.

I.      Factual and Procedural Background

        A.      The Underlying Action

        The insurance coverage issues before the court arise from a dispute concerning a September 2002 contract Wingard Properties entered into with the Homeowners. Wingard Properties filed a mechanic's lien to recover $86,703.56 it claimed the Homeowners owed it under the construction contract. *Wingard Props., Inc. v. Schwartz*, C/A # 07-CP-26-3958 (pending in South Carolina Court of Common Pleas, Fifteenth

---

        [3] The notice of the hearing was provided to all counsel on June 10, 2010 via CM/ECF [Entry #54] and mailed to pro se Defendants Mr. and Mrs. Wingard at their last known address [Entry #55]. At the hearing, counsel for Builder's Mutual represented that counsel for Wingard and counsel for the Homeowners informed his office that they did not plan to attend the hearing, and that they would rely on their briefs, which consisted of two and seven pages, respectively. Counsel did not provide the court with any information concerning their intentions.
        Despite the court's April 27, 2009 Order [Entry #17] instructing Mr. and Mrs. Wingard to advise the clerk in writing of any address changes throughout the case, on June 21, 2010, the notices of hearing mailed to them were returned as undeliverable. [Entries #56 and #57.]

Judicial Circuit, Horry County; referred to herein as "Underlying Action"). The Homeowners answered and filed a counterclaim in the Underlying Action [Entry #47-1], alleging numerous construction defects in the home Wingard Properties built. The Homeowners also filed third-party claims against Mr. and Mrs. Wingard and Wingard Family, claiming that Wingard Properties' corporate veil should be pierced and that the Third-Party Defendants should be regarded as the same entity as Wingard Properties for purposes of the claims in the Underlying Action. Homeowners brought the following causes of action: Construction Negligence, Breach of Warranties, Breach of Warranty of Habitability, Breach of Contract, Unfair Trade Practices, Accounting, Piercing the Corporate Veil, and Fraudulent Conveyances. In paragraph 40 of their Amended Answer, Cross-claim, and Third-Party Claim, Homeowners set forth some 213 alleged construction defects, which broadly fall into the following categories: Foundation and Drainage Issues; Gutters; Cabinets; Drywall; Tile and Granite; Windows and Doors; Additional Items Not Completed Per Specifications; Damages by Other Contractors; Stucco and Exterior; Paint; Plumbing; Waterway Issues (Southern Land and Water); and Landscaping. Underlying Action's Am. Answer, Countercls. and Third-Party Claims, ¶ 40. Wingard Properties denied these defects. Wingard Opp'n 2. The Underlying Action has been stayed pursuant to South Carolina Rule of Civil Procedure 40(j),[4] so no ruling on the merits has been issued.

---

[4]South Carolina Rule of Civil Procedure 40(j) permits the parties to agree to strike a case from the court's active docket for up to one year. *See* S.C.R.C.P. 40(j).

B.    The Declaratory Judgment Action

Wingard Properties tendered the underlying action to Builders Mutual, which agreed to defend it in that matter. *See* Pl.'s Mem. 2. On March 3, 2009, Builders Mutual brought this declaratory judgment action (DJ), seeking a ruling that the CGL Policy issued to Wingard Properties: (1) does not provide coverage for the construction defects complained of in the Underlying Action; (2) does not require Builders Mutual to indemnify Wingard Properties, and (3) does not require Builders Mutual to defend or indemnify Mrs. Wingard or Wingard Family because they are not "insureds" under the Policy and circumstances at issue.

Wingard and Mr. and Mrs. Wingard answered and counterclaimed asking for the court's declaration that the claims raised against them in the Underlying Action are covered by the Policy. *See* Wingard Answer & Countercl. [Entry #9]. The Homeowners also answered and seek the court's declaration of coverage.

C.    The CGL Policy

Builders Mutual first issued a CGL policy to Wingard Properties on May 1, 2003, and the Policy was renewed each year through May 1, 2006. Pl.'s Mem. 2. The following portions of the Policy are relevant to the issues raised in the motions for summary judgment:

SECTION I - COVERAGES

\* \* \*

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

\* \* \*

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period . . ..

\* \* \*

2. Exclusions

This insurance does not apply to:

\* \* \*

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . ..

\* \* \*

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

\* \* \*

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and

directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

&ast; &ast; &ast;

2. Each of the following is also an insured:

&ast; &ast; &ast;

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" . . . , but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . . .

&ast; &ast; &ast;

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company . . . .

&ast; &ast; &ast;

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

&ast; &ast; &ast;

SECTION V - DEFINITIONS

&ast; &ast; &ast;

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

&ast; &ast; &ast;

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

&ast; &ast; &ast;

(2) Work that has not yet been completed or abandoned. . . . .

&ast; &ast; &ast;

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . . .

&ast; &ast; &ast;

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes
       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
       (2) The providing of or failure to provide warnings or instructions.

[Entry #47-2].

Exclusion *l* was modified by endorsement #CG 22 94 (10/01) by replacing it with the following language:

> EXCLUSION - DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF
> * * *
> 2. Exclusions
> This insurance does not apply to:
>
> l. Damage To Your Work
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

A further endorsement (#BCG 0015 (01/02)) modifies the Policy by adding the following exclusion:

> FUNGUS, MOLD, AND MILDEW EXCLUSION
> * * *
> This insurance does not apply to:
> "Fungus", Mold and Mildew
> (1)     "Bodily injury" [or] "property damage" . . . arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins" or resulting allergens . . . .

II.    The Declaratory Judgment Act and Summary Judgment

A.    The Parties' Positions

Builders Mutual seeks judgment as a matter of law, claiming no factual determinations are necessary for the court to rule in Builders Mutual's favor on the sole legal issue before the court of whether claims in the Underlying Action are covered by the Policy. Defendants oppose Builders Mutual's motion on alternative grounds, claiming initially that Wingard Properties is entitled to a finding of coverage for the claims raised in the Underlying Action, and alternatively, that this matter is not yet "ripe" for decision because factual issues regarding coverage must be determined in the pending, but dormant, Underlying Action.

In opposing Builders Mutual's Motion for Summary Judgment, Wingard characterizes its position as follows:

> Wingard[] has also filed a Motion for Summary Judgment, seeking to have the Court declare coverage to exist or, in the alternative, asking that the Court declare that this Declaratory Judgment action is not yet ripe and that under current SC law, coverage can not be determined until the underlying litigation is decided and damages are assessed.

Wingard Opp'n 3. In its own Motion for Summary Judgment, Wingard claims there are no factual issues and that it is entitled to judgment as a matter of law that the Builders Mutual Policy covers it for "claims/damages/losses alleged by the Defendants Schwartz." Wingard Mot. for Summ. J. [Entry #41] 1. In the next paragraph of its own motion, Wingard also claims the matter is not ripe for decision and that facts must be developed before a coverage determination may be made. *Id* at 2. Although Wingard offers scant

analysis of its ripeness claim, its position appears to be that, because some recent coverage opinions decided pursuant to South Carolina law included discussion of the findings of liability and damages in the underlying actions, no coverage determination can yet be made here. *See* Wingard Opp'n 3-4.

The Homeowners likewise assert that it is "too early in discovery process of the underlying action to determine the amount of resulting non-excluded damages . . . ." They ask that Builders Mutual's Motion for Summary Judgment be denied and claim the amount of damages that should be covered under the insurance contract "is an issue of jury determination in the underlying action." Homeowners Opp'n 2.

B.      Legal Standard

The court must determine whether it is appropriate to issue a declaration regarding coverage and whether summary judgment is appropriate, i.e., whether there are factual issues that are in dispute or must be developed prior to making a declaration as to coverage.

Builders Mutual avers there is a "real and justiciable controversy between the parties" and seeks the court's ruling pursuant to the Declaratory Judgment Act ("the Act"), which provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a) (2010). *See* Compl. ¶ 6 (citing Declaratory Judgment Act.) In its responsive pleading, Wingard includes a counterclaim under the Act in which it, too, request the Court's declaration of rights and obligations regarding the "real and

justiciable controversy between the parties[.]" *See* Wingard Answer and Countercl. [Entry #9] 34–40.  The Homeowners admit the portion of Builders Mutual's Complaint claiming there is a "real and justiciable controversy" and end their responsive pleading with their own request for a "declaration of coverage from this court." *See* Homeowners Defs.' Answer [Entry #30] 6 and "Wherefore" clause.

Although Defendants alternatively claim the matter is not ripe, they offer no discussion of whether the court should exercise its authority to issue a declaration of coverage rights and obligations pursuant to the Act.  The undersigned submits it is appropriate for the court to issue a declaratory judgment as to the coverage matters before it.

The court's power to issue its declaration regarding the rights and obligations of parties as to insurance coverage or other issues lays within the court's discretion. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).  The Declaratory Judgment Act gives courts this discretion to issue such judgments when the requested relief will "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937).

The Fourth Circuit has "frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of judgment against the insured on the underlying claim for which coverage is sought."

*Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375–76 (4th Cir. 1994)

(*abrogated in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

"[W]hen an insurer comes to federal court seeking a declaratory judgment on coverage

issues while the underlying litigation against its insured is pending in the state courts,

considerations of federalism, efficiency, and comity should also figure into the

discretionary balance, and may, in certain circumstances, require the federal court to

refuse to entertain the action, when the declaratory relief sought would serve a useful

purpose." *Nautilus*, 15 F.3d at 376 (*citing to Mitcheson v. Harris*, 955 F.2d 235, 237–41

(1992)). Additional considerations include the following: "(I) the strength of the state's

interest in having the issues raised in the federal declaratory action decided in the state

courts; (ii) whether the issues raised in the federal action can more efficiently be resolved

in the court in which the state action is pending; (iii) whether permitting the federal action

to go forward will result in unnecessary 'entanglement' between the federal and state

court systems, because of the presence of 'overlapping issues of fact or law.'" *Id.* at 377

(*citing and quoting Mitcheson*, 955 F.2d at 237–38). The court should also consider

whether the declaratory judgment action is being used for "procedural fencing," that is, to

obtain a hearing in federal court in a case that otherwise would not be removable. 15 F.3d

at 377.

After considering the principles and factors set out by the Fourth Circuit, the

undersigned believes it is appropriate to issue a declaratory judgment in this case. A

decision from this court will clarify and settle the legal relations at issue and will end

uncertainty and insecurity regarding the Underlying Action. The legal issues before the court are readily determinable based on South Carolina law and may be determined without entangling issues of fact concerning the Underlying Action. In the interest of judicial economy and efficiency, this matter should be resolved now, in this court, where the matter has been pending since 2009, rather in the state court, where it has been sitting idle since 2007.

III.   Law and Analysis

    A.   South Carolina Law Regarding CGL-Policy Coverage in the Construction Context

The principal coverage issue is whether the Homeowners' underlying claims against Wingard Properties for defective construction of their home are covered under the CGL Policy. Full analysis of this issue requires consideration of CGL policies in general and South Carolina law interpreting these types of policies in particular.

Over the past several years, South Carolina's appellate courts have interpreted similar CGL policies in the context of whether claims of construction defects are covered under those policies. The decisions involve consideration of whether claims in underlying disputes are covered by the policy's grant of coverage and typically involve determining whether the complained-of act involves "property damage" and whether there was an "occurrence." Each of these terms is defined in a standard CGL policy.[5] If insurable

---

[5]   As with many types of insurance, many carriers offering CGL policies utilize somewhat standardized language for some of their policies' language. Several organizations, including the Insurance Service Office (ISO), prepare and sanction such language, revising it from time to time. *See* 4 Bruner & O'Connor, *Construction Law*, § 11.6 (2010) (explaining ISO

property damage is determined to have been caused by an occurrence,[6] the analysis continues to determine whether any policy exclusions eliminate that coverage. Most often, coverage analysis in construction-defect cases includes determination of the "your work" exclusion, often found as exclusion "*l*." in CGL policies.

      1.    *L-J, Inc. v. Bituminous Fire & Marine Insurance Co.*: Finding No CGL-Defined "Occurrence" for Damage to Insured's Own Faulty Work-Product

In *L-J, Inc. v. Bituminous Fire & Marine Insurance Co.*, 621 S.E.2d 33, 36 (S.C. 2005), the South Carolina Supreme Court held that property damage to a general contractor's work product itself did not constitute an "occurrence" under the contractor's CGL policy. *Id.* In *L-J*, the general contractor performed site-development work and built roads for a subdivision. *Id.* at 34. After the roads had deteriorated within four years

_____

is an insurance-industry-supported organization with a "primary mission" of "develop[ing] certain standard insurance policies."). The Policy at issue here contains the language of the 1986 ISO form CG 00 01 10 01 for the Coverage A Insuring Agreement. Based on the context and discussion in the recent South Carolina Supreme Court cases discussed within (*LJ, Inc. v. Bituminous Fire & Marine Insurance Co.*, 621, S.E.2d 33 (S.C. 2005) and *Auto-Owners Insurance Co. v. Newman*, 684 S.E. 2d 541 (S.C. 2009)), the policies at issue in those cases contain the same insuring-agreement language. As discussed within, however, the exceptions and exclusions applicable to the Policy at issue are not identical to those in *Auto-Owners*.

    [6]The standard ISO policy definition for an occurrence follows:

    13. "Occurrence" means an accident, including continuous or repeated exposure
    to substantially the same general harmful conditions.

The policy at issue here, as well as those at issue in most cases discussed within use this definition of an occurrence. *See* Policy, § V, para. 13 (page 30 of 92 of Entry #47-2); s*ee also L-J*, 621 S.E.2d at 35; *Auto-Owners*, 684 S.E.2d at 543.

of construction, the subdivision's developer sued the general contractor for breach of contract, breach of warranty, and negligence. *Id.*

The court determined that the contractor's negligent acts caused damage to its work product, i.e., the road system itself, and that there had been no occurrence. The court found that this "faulty workmanship" was not caused by an "accident" or "exposure to the same general harmful conditions," and therefore there had been no "occurrence" to trigger coverage. *Id.* Important to the court's analysis was the fact that the underlying action contained no allegations of property damage "beyond the improper performance of the task itself." *Id.*

Although the *L-J* court found no coverage, it specifically noted that CGL policies may provide coverage when "faulty workmanship causes a third party bodily injury or damage to other property, *not in cases where faulty workmanship damages the work product alone.*" *Id.* at 36, n.4 (emphasis in original). In 2009, the state's highest court considered that very issue in the CGL-policy-coverage context in *Auto-Owners Insurance Company v. Newman*, 684 S.E.2d 541 (S.C. 2009).

    2.    *Auto-Owners Insurance Co. v. Newman*: Finding CGL-Defined "Occurrence" Based on Damage to "Other Property" and CGL's "Subcontractor Exception" Salvaged Coverage Otherwise Precluded by "Your Work" Exclusion.

In *Auto-Owners*, the plaintiff insurer sought a declaratory judgment that it was not responsible for indemnifying its insured general contractor for damages to a residence that it built. The homeowner complained that one of the general contractor's

subcontractors improperly installed stucco on the home and that the stucco defects permitted water to seep into the home. The water intrusion caused damage to the sheath enveloping the home and, in turn, to the home's wood structure. *Id.* at 542-43.

In determining the policy's grant of coverage, the *Auto-Owners* court found the "continuous moisture intrusion resulting from the subcontractor's negligence" in applying the stucco caused property damage other than to the stucco itself, thereby triggering an "occurrence" under the policy's language. *Id.* The court differentiated the subcontractor's negligent application of the stucco itself, explaining that act in and of itself was not an "occurrence" under the policy's terms. Rather, the continued water intrusion was an "accident," which caused property damage. The policy did not define "accident," but South Carolina case law defines an accident under a CGL policy as an "unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Id.* at 543 (*quoting Green v. United Ins. Co. of Am.*, 174 S.E.2d 400, 402 (S.C. 1970)).

The *Auto-Owners* court adopted the ruling presaged in *L-J*, finding that the defective stucco-application allowed moisture intrusion into the home, which damaged the sheathing and framing and constituted "property damage" to property beyond the damage to the defective work product itself. In other words, the defective stucco work resulted in moisture damage to "other property." This chain of events caused the homeowner's claim to be more than "merely a claim for faulty workmanship typically excluded under a CGL policy." 684 S.E.2d at 544. The court hastened to note that the

defective workmanship itself—the stucco—did not amount to an "occurrence," but the resulting continuous moisture intrusion did. Damage to other property in the home was an accident—"an unexpected happening or event"—that had not been intended by the general contractor. *Id.*

After finding the water-intrusion damage caused by the negligently-installed stucco was an "occurrence" covered by the CGL policy, the court focused on the policy's "your work" exclusion and considered whether that exclusion would prevent the otherwise-covered "occurrences" from being insured. *Id.* at 545. Noting that its ruling "gives effect to the subcontractor exception to the 'your work' exclusion in the standard CGL policy,"[7] the court provided the following brief history of CGL policies and the "your work" exclusion:

> A CGL policy in the home construction industry is designed to cover the risks faced by homebuilders when a homeowner asserts a post-construction claim against the builder for damage to the home caused by alleged construction defects. Several construction-specific exclusions in the standard CGL policy exclude from coverage certain types of property damage attributable to risks outside the scope of CGL recovery. The primary exclusion is the "your work" exclusion which provides that the policy will not cover "property damage" to "your work." In 1986, the insurance industry amended the "your work" exclusion to provide that even if the property damage is to the builder's own work, the "your work"

---

[7] The "subcontractor exception" is the second sentence in the below "Damage to Your Work" exclusion, which is "Exclusion *l.*" in standard 1986-version CGL policies:

l. Damage To Your Work
   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." In doing so, the insurance industry extended liability coverage for property damage to the contractor's completed work arising out of work performed by the subcontractor.

*Id.* (*citing* Rowland H. Long, *The Law of Liability Insurance*, § 3.06(1) (2007)). The court noted "the subcontractor exception to the 'your work' exclusion preserves coverage for the general contractor as to claims for property damage that would otherwise be excluded as 'your work.'" *Id.* at 546. Because the policy at issue in *Auto-Owners* contained that exclusion, the court found the general contractor's coverage was not precluded because work by one of its subcontractors had been faulty and had caused significant problems for "other property."

B.      Application of South Carolina Coverage Law to Dispute

Against this backdrop, the court considers the parties' claims regarding whether coverage exists for claims raised in the Underlying Action, considering first whether the Policy's Insuring Agreement provides coverage and, if so, whether such coverage is subject to any policy exclusions. Because this matter is before the court on cross-motions for summary judgment, the court will also consider whether judgment as a matter of law is appropriate or whether factual issues exist.

1.      No Coverage in Policy for Claimed Property Damage

The Homeowners' claims in the Underlying Action against Wingard Properties assert that the general contractor's faulty workmanship and defective construction have resulted in damage to the home it and its subcontractors built. The alleged construction

defects include claims of damage from water intrusion that resulted from faulty workmanship. *See* Am. Answer and Countercl. and Third-Party Compl. ¶¶ 37–41. The Homeowners allege numerous specific defects that have required "repairs and reconstruction" and have caused "a devaluation of the residence and exposure to moisture intrusion and the hazards associated thereto." *Id.* ¶ 41.

Builders Mutual argues that the majority of the Homeowners' claims are not covered claims because they are purely claims of damage directly attributable to "faulty workmanship consisting of improperly completed or incomplete work." Pl.'s Mem. 8. Citing to *Century Indemnity Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355 (S.C. 2002) and *C.D. Walters Construction Co. v. Fireman's Insurance Co. of Newark*, 316 S.E.2d 709 (S.C. App. 1984), Builders Mutual explains that CGL policies are intended to cover "damage to property other than [the] completed work itself," not purely economic losses. Builders Mutual acknowledges that CGL policies may provide coverage when "the insured's faulty workmanship causes accidental injury to persons or property." Pl.'s Mem. 10 (*citing C.D. Walters*, 316 S.E. 2d at 711). Builders Mutual also acknowledges that some of the claims in the Underlying Action may assert some "resulting damage" to the residence that was caused by faulty workmanship, making those items "occurrences" under the policy. Pl.'s Mem. 9-10. However, it then cites to *L-J* for the proposition that a general contractor is not entitled to coverage if the claim arose out of the general's faulty workmanship and caused damage "only to the project that the general contractor completed for the property owner." *Id.* at 10 (citing *L-J*, 621 S.E.2d at 36).

Defendants do not specifically address Builders Mutual's argument regarding work that was alleged not to have been performed or completed properly. Rather, Defendants focus on the portion of the claims in the Underlying Action that allege "one area of work causing water intrusion with resultant damage to other portions of the structure." Wingard Opp'n 2; *see also* Homeowners Opp'n 1-2 ("[I]ntrusion of water has resulted in significant damage to the interior of the structure of the home."). They argue that these allegations of resultant damage trigger coverage by alleging "property damage" caused by an "occurrence" under South Carolina law as interpreted in *Auto-Owners*. Wingard Opp'n 3; *see* Homeowners Opp'n 2 ("The [*Auto-Owners*] case holds that there is coverage under the Commercial General Liability Policy for resulting damages.").

Defendants also counter that Builders Mutual's request for summary judgment should be denied because factual issues regarding which damages are those "resulting" from "occurrences" causing damage to other property and which are not covered because they are merely damage to the insured's work-product itself. Wingard Opp'n 3-6; Homeowners Opp'n 2.

The undersigned agrees with Builders Mutual that underlying claims for incomplete or improperly completed work itself do not satisfy the Policy's coverage requirements that there must be "property damage" caused by an "occurrence." *See Auto-Owners*, 684 S.E.2d at 544 (noting "subcontractor's negligent application of the stucco does not on its own constitute an 'occurrence[.]'"); *L-J*, 621 S.E.2d at 36 (finding no "occurrence" because no claim of property damage beyond "the improper performance

of the task itself"); *see also Builders Mut. Ins. Co. v. R Design Constr. Co.*, C/A No. 07-1890-JFA, 2010 WL 2079741 (D.S.C. May 24, 2010) (finding no "occurrence" because property-damage claim "relates primarily to faulty workmanship").

The analysis does not end there, however. Some of the defects alleged in the Underlying Action are claims for damage to property other than the faulty work-product itself. As discussed above, the South Carolina Supreme Court recently held that claims for this "resulting damage" that occurs when the negligent work of one subcontractor damages the work of another subcontractor are "occurrences" causing "property damage" that satisfy CGL policies' Insuring Agreement terms. As pointed out by Defendants, some of the damages claimed in the Underlying Action are claims for precisely the type of resulting damage to "other property," i.e., damage to property other than the faulty work-product itself. Based on the detailed analysis the South Carolina Supreme Court set out in *Auto-Owners*, such resulting-damage claims satisfy the Policy's Insuring Agreement's definition of "property damage" caused by an "occurrence." The Homeowners have alleged some claims in the Underlying Action that would provide coverage under the Policy if no exclusions applied. However, to complete the coverage analysis, the court must consider the applicable policy exclusions.

2.    The "Your Work" Exclusion

Builders Mutual effectively concedes that some of the damages claimed in the Underlying Action may be considered "resulting" damage to "other property" of the type the *Auto-Owners* court found to be a covered "occurrence." Nonetheless, Builders Mutual argues, the Policy's "your work" exclusion precludes coverage for claims brought in the Underlying Action. (*See* Pl.'s Mem. 11.)

As the *Auto-Owners* court noted, CGL policies typically contain a "your work" exclusion that precludes coverage for property damage to the insured's work or work done on the insured's behalf and arising out of the insured's work or work done on the insured's behalf after the work is completed.[8] In the standard CGL policy form, like the one analyzed in *Auto-Owners*, the "your work" exclusion includes a "subcontractor exception," which provides that the your work "exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *See Auto Owners; see also French v. Assurance Co. of Am.*, 448 F.3d 693, 700–01 (4th Cir. 2006) (discussing the history of the subcontractor exception and noting ISO CGL policies have included the exception since the 1986 revision).

3.    Endorsement CG 22 94 Removes the "Subcontractor Exception."

In this case, the Policy contains an endorsement, known as Endorsement CG 22 94 (10/01), that removes the standard subcontractor exception from the "your work"

---

[8]The Policy defines "Your Work" as "Work or operations performed by you or on your behalf." Policy, § V, ¶ 22.(a)(1), (page 31 of 92 of Entry #47-2).

exclusion. *See* Policy, page 32 of 92 of Policy of Entry #47-2 (setting out the modified "your work" exclusion). The replacement exclusion removes the "subcontractor's exception" discussed in *Auto-Owners* and *French*, leaving the "your work" exclusion to exclude coverage for "'[p]roperty damage to "your work" arising out of it or any part of it and included in the 'products-completed operations hazard.'" Builders Mutual argues that removal of the subcontractor's exception requires a different analysis than that in *Auto-Owners* and that, without the exception, no coverage is available because all work at issue is the work of the insured Wingard Properties, regardless of whether it was performed by Wingard Properties or subcontractors. *See* Pl.'s Mem. 11.

Although South Carolina courts have not interpreted the CG 22 94 endorsement, The Honorable Patrick Michael Duffy of this court recently considered a CGL policy that included the endorsement. In *Builders Mutual Insurance Co. v. Kalman*, C/A No. 2:07-3609-PMD, 2009 WL 4807003 (D.S.C. Dec. 8, 2009), Judge Duffy held that a CGL policy including that endorsement "removes the subcontractor's exception from the 'your work' exclusion[,]" and that "[w]ithout the subcontractor's exception present in *Auto-Owners*, the property damage claimed by the [homeowners] in the Underlying Complaint falls within the 'your work' exclusion." *Id.* at * 5. In a footnote, Judge Duffy cites two cases that acknowledge that endorsement CG 22 94 eliminates the subcontractor exception to the "your work" exclusion. *See id.* at n.1 *(citing U.S. Fire Ins. Co. v. J.S. U.B., Inc.,* 979 So.2d 871, 884 (Fla. 2007); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)).

In their briefs, Defendants offer no real response to this argument by Builders Mutual, and because they did not attend the hearing, the court did not benefit from their oral advocacy on the issue. Rather, Defendants argue generally in their briefs that many of the claims against Wingard Properties involve allegations of defective work by its subcontractors that should be covered "occurrences" pursuant to *Auto-Owners*. Wingard Opp'n 3; Homeowners Opp'n 2. Wingard does not address the effect of CG 22 94 at all. The Homeowners argue that "[t]he work done on the leveling of the lot and the foundation of the home was all performed by subcontractors[,]" and claim that the "'your own work' exclusion is negated by the subcontractor exception within the commercial general liability policy." (Homeowners Opp'n 2.) Seemingly, all Defendants mistakenly treat the Policy as being identical to the policy in *Auto-Owners*, which contained the subcontractor-exception to the "your work" exclusion.

However, the CG 22 94 endorsement removes the subcontractor exception to the "your work" exclusion, making the coverage purchased by Wingard Properties very different from that in *Auto-Owners*. As modified by Endorsement CG 22 94, the "your work" exclusion precludes coverage for the following: "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." To determine whether the exclusion precludes coverage, the court must consider whether the alleged property damage: (1) was damage to Wingard Properties' work; (2) "arose out of" Wingard Properties' work; and (3) was included in the "products-completed operation hazard."

Regarding question (1), the Policy defines "your work" as "[w]ork or operations performed by you [the Insured] or on your behalf." Policy, V.22.(a)(1). Builders Mutual's position is that "performed on your behalf" includes work performed on Wingard Properties' behalf by its subcontractors and that all damage claimed in the Underlying Action is damage to the home that Wingard Properties built through its subcontractors. *See* Pl.'s Suppl. Mem. [Entry #59] 3. Defendants presented no argument on this point.

The undersigned agrees with Builders Mutual. The Policy's page on which Endorsement CG 22 94 is set out contains the following, which plainly indicates that work performed by an insured's subcontractors is excluded from coverage.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

Policy, CG 22 94, 10 01 (emphasis in original) (found as page 32 of 92 to Entry #47-2). The "subcontractor exception" concerns work "performed on your [insured's] behalf by a subcontractor." Standard ISO CGL 1986 Policy Form, Exclusion *l.* *Cf. Auto-Owners*, 684 S.E.2d at 545 (finding work performed by insured's subcontractors performed "on behalf of" insured and covered because of subcontractor exception). All claimed damages—those for faulty workmanship and defective construction as well as claims related to resulting water damage—are claims for damage to work performed by Wingard Properties itself or subcontractors on its behalf. The entire home was Wingard Properties' work for purposes of the "your work" exclusion. As pointed out by Builders

Mutual (*see* Pl.'s Mem. 12), and undisputed by any party, all damage claimed is to the residence itself and involves work of Wingard Properties and its subcontractors. No damage to work of any third party has been alleged.

Next, the court considers whether the alleged property damage "arise[s] out of" work by Wingard Properties or its subcontractors. Again, Builders Mutual claims that it did, and Defendants make no argument on the point. Although the Policy does not define "arising out of," the South Carolina Supreme Court has interpreted that phrase in a general-liability-policy context and found it means "caused by." *McPherson v. Michigan Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993) (holding exclusionary clause in general liability policy, "arising out of" narrowly construed as "caused by.") As discussed within, the Homeowners claim that all damage to their home was "caused by" work by Wingard Properties or those working on its behalf. The undersigned agrees that all claimed damage "arises out of" work by Wingard Properties or work performed on its behalf.

Finally, Builders Mutual asserts that the third factor—concerning whether damage was included in Policy's "products-completed operations hazard"—is not at issue because all of the Homeowners' claimed damage occurred after Wingard Properties and its subcontractors had finished work on the home. Pl.'s Suppl. Mem. 3. The undersigned agrees and recommends finding the "your work" exclusion, as modified by Endorsement CG 22 94, precludes coverage for Wingard Properties. While the undersigned is mindful of the general proposition that all exclusions of coverage are to be strictly construed against the insurer, *see Owners Ins. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005),

nonetheless, policy language must be given its plain ordinary meaning, and insurers have the right to limit their liability so long as those limits do not violate statute or public policy. *See S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 104 (S.C. App. 2006). The language of the Policy here is plain—the "your work" exclusion offers no exception for the work of subcontractors. All work complained of in the Underlying Action is the work of general contractor Wingard Properties and is excluded under the clear terms of Exclusion *l*, the "your work" exclusion, as amended by Endorsement CG 22 94. Accordingly, all property damage claimed by the Homeowners in the Underlying Action is subject to the exclusion.

Builders Mutual also claims that the Policy's "Fungus, Mold, and Mildew Exclusion," Endorsement CG0015, precludes coverage for claims raised in the Underlying Action. However, because the undersigned recommends a finding that all claims from the Underlying Action are excluded by the "your work" exclusion, it is not necessary to separately analyze that exclusion or its potential application to this matter.

C.     Wingard Family and Mrs. Wingard Are Not "Insureds" Under Policy.

Builders Mutual seeks the court's declaration that Wingard Family and Mrs. Wingard are not "insureds" under the terms of the Policy at issue. Citing to Policy definitions, Builders Mutual argues that the named insured in the Policy is "Wingard Properties, Inc." and that because Wingard Family is not listed as an insured entity, it would only be an "insured" if covered by any provisions in Section II of the Policy. The last paragraph of Section II provides as follows:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Policy, Section II (found at Page 9 of 14 of Policy, Page 26 of 92 of Entry #47-2).

Wingard Family provides no argument that it is an "insured" under the policy in either memorandum.

After reviewing the Policy and the allegations against Wingard Family, the undersigned agrees with Builders Mutual that Wingard Family is not an insured in this matter and accordingly agrees that Builders Mutual does not owe Wingard Family a defense in the underlying action. It is recommended that the court rule that Wingard Family is not an "insured" under the policy and, as such, is not entitled to a defense or indemnity as to the Underlying Action.

Regarding whether Mrs. Wingard is an "insured," Builders Mutual points to Section II.1.d. and II.2.a. of the Policy regarding "Who is an Insured" and argues that Mrs. Wingard is not covered. Those sections indicate the Policy covers the officers, directors, and stockholders of Wingard Properties, as well as its employees and volunteer workers, when they are acting on behalf of Wingard Properties. Pl.'s Mem. 7 (citing to Policy Sections II.1.d. and II.2.a. (found at Page 8 of 14 of the Policy and Page 25 of 92 of Entry #47-2).

Mrs. Wingard is not represented by counsel and has filed no response to any of the summary judgment motions in this matter.[9] The undersigned has reviewed the Policy—both the sections to which Builders Mutual refers and others—and the underlying allegations against Ms. Wingard. The Policy insures Wingard Properties, as well as its officers, directors, and stockholders when acting on behalf of Wingard Properties. Policy § II.1.d. Employees and volunteer workers are also covered. *Id.*, § II.2.a.

The underlying action includes allegations that Ms. Wingard is married to the principal of Wingard Properties and that she received improperly-siphoned property from that entity. Nothing in the underlying pleadings indicates she was "acting on behalf" of Wingard Properties in any manner complained of in the underlying suit. The undersigned agrees with Builders Mutual that Mrs. Wingard is not an insured entitled to a defense or indemnification and recommends that this portion of Builders Mutual' motion for summary judgment be granted.

D.    Case is Ripe for Ruling on Summary Judgment

As an alternative argument to having summary judgment granted declaring coverage exists for all claims in the Underlying Action, Defendants claim that this matter is not yet "ripe" for decision because factual issues regarding coverage must be determined in the pending, but dormant, Underlying Action. In its own motion for

---

[9] Mr. Wingard is also proceding pro se, but Builders Mutual has not contested his status as an "insured."

summary judgment, Wingard claims that the decision in *Auto-Owners* and Judge Duffy's decision in *Jessco v. Builders Mutual Insurance Co.*, C.A. No. 2:08-1759-PMD, 2009 WL 3065210 (D.S.C. Sept. 22, 2009), "requires a full consideration of the damages and of the record and evidence of the underlying lawsuit before any determination can be made as to coverage." Wingard Mem. 2.

Although Wingard Properties offers no analysis of the unripeness claim, its position apparently is that, because the *Auto-Owners* and *Jessco* coverage decisions were issued after the underlying actions had been tried or arbitrated, and the decisions discussed the damages in making coverage determinations, no decision as to coverage here may be made prior to a resolution of the Underlying Action.

Based on the recommended finding in this matter that no claims are covered because all claims alleged are excluded as being the work of the insured general contractor, the undersigned believes no factual findings are required to issue a comprehensive declaration of coverage in this matter. The "your work" exclusion plainly precludes coverage for all claims in the Underlying Action. All allegations are about Wingard Properties' work. There are no factual issues that must be determined to decide whether there is any coverage. In this situation, it is appropriate that a declaration of judgment be made as a matter of law. Builders Mutual's motion for summary judgment should be granted; for the same reasons, Wingard Properties' motion for summary judgment should be denied.

The undersigned notes that, if the subcontractor exception to the "your work" exclusion were in effect in this matter, there would likely be issues of fact to be determined regarding which of the claimed damages in the underlying action may be covered "occurrences" that resulted from a subcontractor's work that damaged other property and which damages were simply from faulty workmanship damaging the work-product itself, which would not be covered. Defendants' observations that in *Auto-Owners* and in the *Jessco* decision by Judge Duffy there was consideration of such factual issues is true in that situation. However, in this situation, in which no claims are covered because they are all claims regarding work by or on behalf of the general contractor, there is no need for such a factual analysis to take place. Rather, it is appropriate that these coverage determinations be issued as a matter of law.

IV.    Conclusion

Based on the foregoing, the undersigned recommends that Plaintiff Builders Mutual Insurance Company's Motion for Summary Judgment [Entry #37] be granted and that Wingard's Motion for Summary Judgment [Entry #41] be denied. Further, the undersigned recommends that judgment be entered declaring the following three coverage determinations sought by Builders Mutual:

(A) Wingard Family, LLC is not an insured under the policy and is not entitled to indemnification or a defense.

(B) Mrs. Deborah Wingard is not an insured with respect to the allegations against her because they do not involve actions on behalf of Wingard Properties, Inc. and therefore she is not entitled to a defense or indemnification.

(C) The policy excludes any damage to the insured's work and arising out of the work or any part of it. Because Wingard Properties was the general contractor, the entire project was its work and all of the alleged damage is excluded.


     IT IS SO RECOMMENDED.

July 1, 2010                               Shiva V. Hodges
Florence, South Carolina             United States Magistrate Judge